# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN NKANSAH | : | CIVIL ACTION |
| v. | : | NO. 19-4472 |
| KLEINBARD LLC, EDWARD M. DUNHAM, JR., & ERIC J. SCHREINER | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                                        **February 26, 2020**

This legal malpractice case arises from the defendant attorneys' performance in an action plaintiff Stephen Nkansah brought to recover thousands of dollars he had invested in a Colombian beverage company. He claimed the defendants in that case had swindled the money through a scheme to defraud him. That action ended in summary judgment in favor of those defendants.

In this action, Nkansah alleges the defendant attorneys failed to conduct necessary discovery and to adequately oppose the summary judgment motion in the underlying action. As a result, so he claims, judgment was entered against him.

The defendants have moved to dismiss, arguing that Nkansah has not stated a claim for breach of contract, negligence or breach of fiduciary duty. The defendants also request we strike Nkansah's requests for declaratory judgment, delay damages, punitive damages and attorneys' fees, as well as references in his amended complaint to the Pennsylvania Rules of Professional Conduct.

We conclude that Nkansah has stated a claim for negligence, but not claims for breach of contract or breach of fiduciary duty. Therefore, we shall deny the motion in part and grant it in part.

**Factual Background[1]**

In July 2014, plaintiff Stephen Nkansah decided to invest in Wazzoo Juices ("Juices"), a Colombian beverage company.[2] He invested in Juices based on fraudulent misrepresentations from Dotun Aiyegbusi, Byron Drayton, Robert Towns and Robert Lee Williams (the "Underlying Defendants"), shareholders in another Colombian beverage company, Wazzoo Beverages ("Beverages").[3] Specifically, Nkansah alleges they misrepresented that, in exchange for his investment, he would receive a 60% interest in Juices, monthly statements and financial records, and a full refund of his money on demand.[4] He alleges that these representations were false and fraudulent because the Underlying Defendants knew Juices was a sham company, his investment would be used for Beverages or some purpose other than Juices, and Juices would never operate profitably.[5]

Nkansah alleges that, in reliance on these misrepresentations, he invested over $107,000 in Juices between July and November 2014.[6] "Dissatisfied" with his investment,

---

[1] The facts are taken from the Amended Complaint. Pl.'s Am. Compl. (ECF No. 20).

[2] *Id.* at ¶ 16.

[3] *Id.* at ¶¶ 13, 28.

[4] *Id.* at ¶¶ 16-18.

[5] *Id.*

[6] *Id.* at ¶ 21.

he demanded a refund in December 2014.[7] The Underlying Defendants refused to return his money.[8]

Nkansah engaged defendant Kleinbard LLC to represent him to recover his investment losses.[9] Kleinbard attorneys Edward Dunham, Jr., Esq. and Eric Schreiner, Esq. filed an action for fraud and breach of contract against the Underlying Defendants in 2016 in this court.[10]

According to Nkansah, his fraud claim depended on proving the Underlying Defendants used his money for purposes other than in Juices, specifically in another company, Beverages.[11] He claims that the defendants failed to take necessary and appropriate discovery to obtain evidence showing how the Underlying Defendants had misused his investment.[12] He contends that the defendants should have filed a motion to compel production of the documents or issue subpoenas requesting documents from Juices and Beverages in Colombia.[13] He argues that had the defendants employed the usual and customary legal processes in the United States or Colombia, they would have had proof that his money had been spent for purposes other than for Juices, or he would have been entitled to an adverse inference if the recipients of the discovery requests

---

[7] *Id.* at ¶ 26.

[8] *Id.*

[9] *Id.* at ¶ 29. *See Nkansah v. Aiyegbusi et al.*, No. 16-587.

[10] Am. Compl. at ¶¶ 15, 29, 31, 43.

[11] *Id.* at ¶ 31.

[12] *Id.* at ¶ 32.

[13] *Id.* at ¶ 33.

refused to respond.[14] Nkansah relies on the summary judgment opinion where the court characterized the defendants' actions as demonstrating a "lack of diligence in seeking this discovery."[15]

Nkansah also contends the defendants "grossly mishandled" the briefing in opposition to the Underlying Defendants' motions for summary judgment.[16] He claims the defendants failed to emphasize that he could rely on circumstantial evidence to prove fraud under Pennsylvania law, and instead wrongly conceded that he had to "trace the money."[17] He also criticizes their request for leave to pursue an "audit" of Juices and Beverages as procedurally unsound.[18]

The court granted summary judgment on the fraud claim. It allowed only the breach of contract claim against Towns to proceed to trial. That trial ended in a defense verdict.[19] According to Nkansah, the jury rejected his claim because the contractual issue had been artificially divorced from the broader, fraudulent context.[20]

Nkansah has since engaged a Colombian law firm and initiated discovery proceedings in Colombia for the purpose of gathering evidence against the Underlying

---

[14] *Id.* at ¶ 45-47.

[15] *Id.* at ¶ 34.

[16] *Id.* at ¶ 36.

[17] *Id.* at ¶¶ 37, 39.

[18] *Id.* at ¶¶ 39-40.

[19] *Id.* at ¶¶ 43-44.

[20] *Id.* at ¶ 44.

4

Defendants (the "Colombian Proceedings").[21] He claims that he has "conclusively established" facts supporting his fraud claim through the Colombian Proceedings.[22]

In 2019, Aiyegbusi filed an action against Nkansah in this district for the improper use of civil proceedings (the "Dragonetti Action").[23] Nkansah contends that the defendants' negligence allowed Aiyegbusi to succeed on the claim against him in the underlying action, fulfilling the prerequisite for a Dragonetti action.[24]

Nkansah brings this action against Kleinbard LLC, Dunham and Schreiner for negligence, breach of contract, and breach of fiduciary duty. He requests compensatory and consequential damages, a refund of payments to the defendants, damages equivalent to the judgment he would have obtained in the underlying case, punitive damages, interest, costs and attorneys' fees. He also seeks a declaration that the defendants' claimed right to payment of outstanding invoices is invalid and a declaration of "the Defendants' obligations relative to the Dragonetti Action."[25] The defendants have moved to dismiss for failure to state a claim.[26]

## Standard of Review

A Rule 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint. In order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[21] *Id.* at ¶ 48.

[22] *Id.* at ¶ 51.

[23] *Id.* at ¶ 55.

[24] *Id.* at ¶ 56.

[25] *Id.* at ¶ 76.

[26] Defs.' Mot. to Dism. (ECF No. 22)

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which, if proven later, support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. Then, we determine whether the facts alleged, if proven, show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

All well-pleaded allegations of the complaint must be accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences must be drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

### Discussion

*Breach of Contract*

The defendants argue the gist of the action doctrine bars Nkansah's breach of contract claim.[27] They claim the gist of the action is for professional negligence, not a

---

[27] Defs.' Mot. to Dism. at 10.

breach of a provision of the contract for legal services.[28] The defendants rely on *N.Y. Central Mutual Insurance Company v. Edelstein*, in which the Third Circuit, applying Pennsylvania law, held that a claim sounded in negligence and was therefore time-barred under the statute of limitations applicable to torts.[29] 637 F. App.'x 70, 73 (3d Cir. 2016). The Third Circuit reasoned that claims sound in negligence unless a party alleges that the other party breached one of the specific executory promises in the contract. *Id.* They point out that Nkansah has not alleged that they failed to follow his instructions or breached a specific provision of their retention agreement. They characterize the essence of his claim as an alleged breach of the standard of care.[30] In response, Nkansah asserts that the defendants breached the specific provision of the retention agreement obligating them to exercise due care.[31] According to Nkansah, the gist of the action doctrine exists primarily to bar tort claims, not contract claims, and numerous Pennsylvania courts have held that tort and contract claims can co-exist in legal malpractice actions.[32]

The Pennsylvania gist of the action doctrine precludes a plaintiff from bringing what is actually a breach of contract claim as a tort claim. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa. 2014). Conversely, he cannot bring a tort claim as a contract claim. *Id.* at 68.

In articulating the gist of the action doctrine, the Pennsylvania Supreme Court distinguished between contract and tort causes of action, stating:

---

[28] *Id.*; Defs.' Reply at 4-6 (ECF No. 31).

[29] Defs.' Mot. to Dism. at 12.

[30] *Id.* at 14.

[31] Pl.'s Resp. at 6 (ECF No. 23).

[32] *Id.* at 8, 12.

7

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract, then the claim should be treated as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (citations omitted). Thus,

> a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* at 70.

Claims for legal malpractice arise from a contractual engagement. The fact that there is a contract between the parties does not necessarily mean that a party's claim for injury or loss resulting from the other party's conduct in performing the contract is a claim for breach of contract. On one hand, a breach of contract cause of action is based on the breach of a specific executory promise in the contract. *Id.* On the other hand, a tort action exists where it is alleged that the defendant breached a duty that exists "independently and regardless of the contract," one that was not created by the parties. *Id.* at 63. Where the claim is based on the same conduct underlying the negligence claim, rather than the defendant's breach of a specific contract provision, it sounds in tort, not contract. *Seidner v. Finkelman*, No. 716 EDA 2017, 2018 WL 4178147, at *5 (Pa. Super. Aug. 31, 2018) (applying the gist of the action doctrine to find appellant's legal malpractice claim sounded

8

in tort because she only challenged the manner in which her attorneys achieved her objectives and whether their advice was within the standard of care).[33]

In *N.Y. Central Mutual*, the Third Circuit rejected the argument that the gist of the action doctrine primarily exists to bar tort claims that sound in contract, not the other way around. The Third Circuit noted the different contexts in which the Pennsylvania Supreme Court has applied the gist of the action doctrine, including questions of whether the court had jurisdiction over a matter and whether certain jury instructions were proper. 637 F. App.'x at 73 n.3 (citing *Bruno*, 106 A.3d at 62–64 (discussing cases)). The Third Circuit stated that "the gist of the action doctrine applies 'to resolve [ ] legal questions in which the distinction between the underlying action being a tort or a contract claim [is] dispositive.'" *Id.* (citing *Bruno*, 106 A.3d at 60). "[T]he mere labeling by the plaintiff of a claim . . . is not controlling." *Bruno*, 106 A.3d at 68.

Nkansah argues *N.Y. Central Mutual* is limited to disputes involving the statute of limitations, which is not implicated here.[34] Although *N.Y. Central Mutual* considered the gist of the action doctrine in the context of the statute of limitations, numerous

---

[33] *See also Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429 (Pa. Super. 2016) (holding gist of the action doctrine did not bar fraudulent misrepresentation claim because appellant's allegation of interest overcharges "sounds in tort as it implicates 'the societal duty not to affirmatively mislead or advise without factual basis'") (citations omitted); *Dixon v. Nw. Mut.*, 146 A.3d 780, 789 (Pa. Super. 2016) (same); *Dolan v. Hurd Millwork Co., Inc.*, No. 2951 EDA 2015, 2019 WL 2564535, at *8 (Pa. Super. June 21, 2019) (holding the gist of the action doctrine did not bar appellee's negligence, negligent misrepresentation and fraud claims because they "reach beyond the contractual obligations set forth in the parties' agreement of sale" and "the agreement of sale merely served as the vehicle to establish the ongoing relationship between the parties, during which Appellants allegedly committed various torts"); *Perkins v. Venezia Enters.*, No. 2039 EDA 2017, 2018 WL 6695332, at *9 (Pa. Super. Dec. 20, 2018) (holding gist of the action doctrine barred fraudulent and negligent misrepresentation claims because the claims arose from the "'specific promise' to deliver the property at issue"); *KMB Shamrock, Inc. v. LNR Transp., Inc.*, No. 09-9046, 2015 WL 13779752, at *7 (Pa. Com. Pl. Sept. 25, 2015) (holding gist of the action doctrine did not bar plaintiff's fraudulent and negligent misrepresentation claims because they were not founded on the breach of any specific executory promise in the contract).

[34] Pl.'s Resp. at 7.

Pennsylvania courts have applied *Bruno* to cases where, as here, the statute of limitations is not an issue. *See, e.g., Telwell*, 143 A.3d at 429; *Dixon*, 146 A.3d at 789; *Perkins*, 2018 WL 6695332, at *9; *KMB Shamrock*, 2015 WL 13779752, at *7.

Nkansah bases his breach of contract claim in Count I on the same allegations as his negligence claim in Count II. Citing the engagement letter, he argues the agreement specifically obligated the defendants to exercise due care, and their failure to provide competent representation breached this specific provision. Nkansah does not allege that the defendants failed to follow his instructions or breached any specific executory promise in their agreement. His claim is based on the alleged breach of the professional standard of care. Therefore, because the gist of Nkansah's action is professional negligence, not breach of contract, we shall grant the defendants' motion to dismiss Count I of the amended complaint.

### *Legal Malpractice*

The defendants argue Nkansah has failed to state a claim for professional negligence because he does not allege facts sufficient to establish that he would have succeeded on the underlying fraud claim but for the defendants' alleged breach of duty.[35] The defendants contend that Nkansah has not and cannot state what the Underlying Defendants actually did with his investment.[36] They claim that the admissions Nkansah obtained through the Colombian Proceedings are not facts and Nkansah has not alleged how these admissions can be used in this action.[37] Even if he established that his money

---

[35] Defs.' Mot. to Dism. at 9; Defs.' Reply at 1-4.

[36] Defs.' Mot. to Dism. at 9.

[37] *Id.* at 10.

was used for a different purpose than promised, they argue, Nkansah would still fail to prove the Underlying Defendants committed fraud. A failure to abide by a promise is not fraud, but breach of contract, the claim that Nkansah already tried and lost.[38]

An essential element of a legal malpractice claim is "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998). To prove actual loss, the plaintiff must show that he had a viable cause of action in the underlying case, and his attorney was negligent in prosecuting that case. *Id*. In other words, the plaintiff must prove the "case-within-a-case." *Id. See also Poole v. W.C.A.B. (Warehouse Club),* 810 A.2d 1182, 1184 (Pa. 2002) (citing *Kituskie*, 714 A.2d at 1030).

Whether Nkansah can prove a "case-within-a-case" is fact intensive and depends on the evidence gathered in the ongoing Colombian Proceedings. Nkansah alleges that the defendants failed to issue subpoenas requesting documents from the two Wazzoo companies or file a motion to compel production of relevant documents. He maintains the defendants wrongly conceded that he had to "trace the money" rather than rely on circumstantial evidence. Instead, they belatedly requested an "audit" of Juices and Beverages after discovery had closed even though the court had no authority to order an "audit" of non-parties in Colombia. In granting summary judgment on the fraud claim, Judge Pratter noted the defendants' conduct reflected a "lack of diligence in seeking this discovery before the eleventh hour of this litigation."[39]

---

[38] *Id*.

[39] *Nkansah v. Aiyegbusi*, No. 16-587, 2017 WL 4387003, at *5 (E.D. Pa. Oct. 2, 2017).

11

The allegations are sufficient to plead the element of causation. Assuming the allegations are proven, a reasonable person could conclude that had the defendants made efforts to conduct discovery, Nkansah could have survived summary judgment and succeeded at trial. Thus, Nkansah has properly stated a claim for negligent malpractice. *See Juday v. Sadaka*, No. 19-1643, 2019 WL 4139089, at *4 (E.D. Pa. Aug. 30, 2019) (denying motion to dismiss where plaintiff alleged defendants failed to take discovery, thereby causing the court to grant summary judgment to the underlying defendants on the plaintiff's fraudulent concealment claim).

*Breach of Fiduciary Duty*

Nkansah claims that the defendants have breached their fiduciary duties of care and loyalty, resulting in damages to him.[40] The defendants argue that Nkansah must show they breached a duty of honesty, fidelity and confidentiality.[41] They contend that the amended complaint fails to allege facts that establish disloyalty.[42] Nkansah counters that a breach of fiduciary duty implicates both the duty of care and the duty of loyalty.[43] He argues that he can properly state a breach of fiduciary duty claim against the defendants under Pennsylvania law even if it only touches on the duty of care.[44]

A duty of care is distinct from a duty of loyalty. An attorney can breach his duty of care without breaching his duty of loyalty. The Pennsylvania Supreme Court has defined the duty of loyalty as attaching "wherever one occupies toward another such a position of

---

[40] Am. Compl. at ¶ 73.

[41] Defs.' Mot. to Dism. at 15.

[42] *Id.* at 16; Defs.' Reply at 6-7.

[43] Pl.'s Resp. at 14.

[44] *Id.*

advisor or counsellor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Basile v. H & R Block, Inc.,* 777 A.2d 95, 101 (Pa. Super. 2001) (quoting *Brooks v. Conston*, 51 A.2d 684, 688 (Pa. 1947)). The Court recognized the essence of this relationship as "trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Id.* (quoting *In re Estate of Scott,* 316 A.2d 883, 885 (Pa. 1974)). Thus, claims for breach of fiduciary duty of loyalty and for breach of duty of care are distinct causes of action. They may co-exist or one may exist without the other.

Courts applying Pennsylvania law interpret a claim for breach of fiduciary duty in the context of legal malpractice as a claim for breach of the duty of loyalty, not the duty of care. "At common law, an attorney owes a fiduciary duty to his client; such duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest, and breach of such duty is actionable." *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992). *See also Gorski v. Smith*, 812 A.2d 683, 711 (Pa. Super. 2002) (vacating judgment entered after jury verdict on fiduciary duty claim against former attorneys because evidence did not show a conflict of interest existed).[45]

To establish a breach of fiduciary duty, the plaintiff must prove: (1) the defendants negligently or intentionally failed to act in good faith and solely for their benefit; (2) he suffered injury; and (3) the defendants' failure to act solely for his benefit was a real factor in bringing about his injury. *Bansley v. Appleton*, No. 809 MDA 2014, 2015 WL 7259000,

---

[45] Federal courts applying Pennsylvania law have interpreted a breach of fiduciary duty claim against an attorney as implicating only the duty of loyalty. *See Bayview Loan Servicing, LLC v. Law Firm of Richard M. Squire & Assocs., LLC,* No. 10-1451, 2010 WL 5122003, at *4 (E.D. Pa. Dec.14, 2010); *Meyers v. Sudfeld*, No. 05-2970, 2006 WL 401855, at *6 (E.D. Pa. Feb. 21, 2006).

at *6 (Pa. Super. May 4, 2015) (quoting *McDermott v. Party City Corp.,* 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)).

In his amended complaint, Nkansah alleges that the defendants breached their fiduciary duty by failing to provide competent representation in both the discovery and summary judgment phases of the underlying litigation. He does not allege any facts demonstrating disloyalty on the part of the defendants. He does not allege that they disclosed confidential information, represented a competitor, misused funds or otherwise acted in bad faith. His allegations support no more than an inference that the defendants breached their duty of care, which does not make out a breach of fiduciary duty claim against an attorney.

### *Declaratory Judgment*

In addition to monetary damages, Nkansah seeks declarations regarding his obligation to pay the defendants' outstanding invoices and the defendants' obligations relative to the Dragonetti Action.[46] The defendants argue that this request is inappropriate because it is duplicative of Nkansah's breach of contract claim.[47] Nkansah counters that declaratory judgment is appropriate because his breach of contract claim is relevant to whether he must pay the defendants for their services and Aiyegbusi's Dragonetti claim against him.[48]

Courts have discretion to entertain or dismiss declaratory judgment actions when they duplicate other claims. *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D.

---

[46] Am. Compl. at ¶ 76.

[47] Defs.' Mot. to Dism. at 16; Defs.' Reply at 7-8.

[48] Pl.'s Resp. at 16.

14

Pa. 2019) (citing *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000)). A declaratory judgment claim is "duplicative" of another claim where they both necessarily involve resolution of the same issues and ultimately result in the same relief. *Id.* at 233 ("Because the same relief would be granted without declaratory judgment, . . . the plaintiff would suffer no prejudice from dismissing the claims for declaratory relief.") (citing *SmithKline Beecham Corp. v. Cont'l Ins. Co.*, No. 04-2252, 2004 WL 1773713, at *1 (E.D. Pa. Aug. 4, 2004)).

Although we are dismissing the breach of contract claim, the negligence claim remains. Deciding the negligence claim and the declaratory judgment claim "requires resolution of the same issues . . . and will ultimately result in the same relief." *SmithKline Beecham Corp.*, 2004 WL 1773713, at *2. The Dragonetti Action against Nkansah is pending before another judge in this court. We are not interfering with that case. In any event, Nkansah's request for declaratory judgment is duplicative of his negligence claim. Hence, it will be stricken.

*Punitive Damages*

The defendants argue that we should strike Nkansah's request for punitive damages because Nkansah has not alleged conduct that was outrageous, willful, wanton or recklessly indifferent to his rights.[49] Nkansah argues that his allegations are sufficient to support recovery for punitive damages.[50] He does allege the defendants' conduct was outrageous. Although we doubt that he can prove that it was, at this stage, we will not strike the demand for punitive damages. *See, e.g., LaMaze v. Vidov Trucking, Inc.*, No.

---

[49] Defs.' Mot. to Dism. at 18; Defs.' Reply at 9-10.

[50] Pl.'s Resp. at 19.

09-158, 2009 WL 650371, at *4 (E.D. Pa. Mar. 12, 2009) ("Deciding whether to award punitive damages is necessarily a fact-intensive inquiry requiring the fact-finder to probe the defendant's state of mind. It would be premature to dismiss this claim when the complaint has alleged sufficient facts that, if proven, could establish the necessary recklessness for a punitive damages award.") (citations omitted).

*Delay Damages*

Nkansah's amended complaint requests "interest" as part of its prayer for relief. The defendants appear to interpret this request as a demand for delay damages. They argue we should strike this demand because delay damages are not recoverable in legal malpractice actions.[51] Pennsylvania Rule of Civil Procedure 238 only allows for delay damages in cases involving bodily injury, death or property damage. Pa. R. Civ. P. 238(a)(1).[52] Pennsylvania courts have held that Rule 238 "is explicitly limited by its own language, and we therefore [ ] do not find it applicable to a legal malpractice action." *Rizzo v. Haines*, 515 A.2d 321, 325 (Pa. Super. 1986). *See also Wagner v. Orie & Zivic,* 636 A.2d 679, 681 n.2 (Pa. Super. 1994) ("[T]o extend delay damages to legal malpractice cases would be to override the purpose of Rule 238, which is to encourage defendants in personal injury actions to offer realistic settlement amounts."). To the extent Nkansah seeks delay damages, we shall strike this demand from the amended complaint.

---

[51] Defs.' Mot. to Dism. at 17; Defs.' Reply at 9.

[52] Although the Pennsylvania Supreme Court has characterized Rule 238 as procedural, the Third Circuit has repeatedly held that the Rule is substantive for *Erie* purposes and must be applied by a federal court sitting in diversity. *Knight v. Tape, Inc.*, 935 F.2d 617, 622 (3d Cir. 1991) (citing cases).

*Attorneys' Fees*

The defendants request that we strike Nkansah's demand for attorneys' fees. They argue there can be no recovery of attorneys' fees as a measure of damages in a legal malpractice action.[53] Nkansah claims that a client who successfully sues his attorney for legal malpractice may recover the fees incurred in prosecuting the claim as compensatory damages.[54] Nkansah only cites New Jersey law to support this position.

Pennsylvania follows the American Rule. Absent bad faith or vexatious conduct, "each side is responsible for the payment of its own costs and counsel fees." *Lucchino v. Commw.,* 809 A.2d 264, 267 (Pa. 2002) (citing *Tunison v. Commw.,* 31 A.2d 521, 523 (1943) (citations omitted)). To award attorneys' fees in the absence of bad faith, there must be either statutory authorization, agreement between the parties or another established exception. *McMullen v. Kutz,* 985 A.2d 769, 775 (Pa. 2009).

Nkansah has not alleged any facts demonstrating the defendants' bad faith or vexatious conduct in this action. Thus, although Nkansah's claim for fees paid to the defendants in the underlying case are a component of his damages, fees incurred in this malpractice action are not.

*References to Pennsylvania Rules of Professional Conduct*

Lastly, the defendants request that we strike Nkansah's references to the Pennsylvania Rules of Professional Conduct.[55] They argue that a violation of the ethical rules cannot form the basis for a legal malpractice claim.[56] They contend that any alleged

---

[53] Defs.' Mot. to Dism. at 19; Defs.' Reply at 10-11.

[54] Pl.'s Resp. at 20.

[55] Defs.' Mot. to Dism. at 20.

[56] *Id.* at 20-21; Defs.' Reply at 11.

violation of the Rules is irrelevant and inadmissible in this action.[57] Nkansah does not dispute that a violation of the Rules by itself is not actionable.[58] He argues that he references the Rules because the engagement letter expressly provides that their agreement shall be governed by and construed in accordance with the Rules.[59] He claims that the purpose of the Rules in this action is to interpret the contractual language of their agreement, not to serve as a source of authority.[60]

A violation of the Rules alone is not a basis for legal malpractice liability. *Struck v. Binns*, No. 94-4835, 1995 WL 57481, at *6 (E.D. Pa. Feb. 10, 1995) (citing *Maritrans,* 602 A.2d at 1284). Nkansah does not cite the Rules to assert a cause of action, but rather to interpret the parties' relationship and the defendants' professional obligations. Reference to the Rules is appropriate for this purpose in legal malpractice actions. *See Fortunato v. CGA Law Firm*, No. 17-00201, 2018 WL 4635963, at *5 (M.D. Pa. Sept. 27, 2018) ("While the parties' briefing does not state explicitly what standard would be applicable to the 'profession at large' in this regard, the Court views Pennsylvania Rule[ ] of Professional Conduct 1.1, which mandates that a lawyer 'provide competent representation to a client,' to be instructive, for the Rules of Professional Conduct have been utilized to evaluate a lawyer's professional duty in an action involving alleged legal malpractice"); *Jani v. O'Meara*, No. 3322 EDA 2015, 2016 WL 6820534, at *4 (Pa. Super. Nov. 18, 2016) (acknowledging Rule 3.1 barring initiation of a frivolous action and concluding that

---

[57] Defs.' Mot. to Dism. at 21; Defs.' Reply at 12.

[58] Pl.'s Resp. at 22.

[59] *Id.* at 22-23.

[60] *Id.* at 23.

18

attorney "had a professional obligation not to sue [the underlying defendant], no matter what his client wanted"). Moreover, Nkansah's retention agreement with the defendants specifically references the Rules.[61] There is no reason to strike these statements.

## Conclusion

We conclude that Nkansah has not stated a claim for breach of contract or breach of fiduciary duty. He has stated a claim for professional negligence sufficient to survive the motion to dismiss. Therefore, we shall grant the motion to the extent it seeks to dismiss Counts I and III of the Amended Complaint, and deny it as to Count II. At the same time, we shall strike Nkansah's request for declaratory judgment, delay damages and attorneys' fees incurred in prosecuting this action.

---

[61] Am. Compl. at Exh. A.