IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEPHEN NKANSAH** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **KLEINBARD LLC, EDWARD M.** | : | |
| **DUNHAM, JR., and ERIC J. SCHREINER** | : | **NO. 19-4472** |

**MEMORANDUM OPINION**

**Savage, J.**                                                                 **April 1, 2021**

This legal malpractice case arises from the defendants' representation of the plaintiff Stephen Nkansah in an action to recover money he had invested in an alleged fraudulent scheme. In that action (the "underlying action"), summary judgment was entered in favor of three defendants and a jury found in favor of the remaining defendant. In this action, Nkansah claims he would have survived summary judgment and prevailed at trial had his attorneys garnered and presented evidence he contends would have proven his case. Because Nkansah cannot prove that he would have prevailed in the underlying action but for the defendants' negligence, we shall grant summary judgment.

In the underlying action, Nkansah's claims against Dotun Aiyegbusi, Byron Drayton, Robert Williams and Robert Towns (the "underlying defendants") were based on his contention that they had used his money to run one Colombian company instead of the one in which he had intended to invest. Stated differently, the crux of Nkansah's claims was that the underlying defendants misrepresented where his money was to be invested and then diverted it to run a company in which he had not invested.

On summary judgment in the underlying action, Judge Pratter concluded that Nkansah had "not carried his burden to show that there [was] a genuine issue of material

fact" regarding his fraud claims.  In opposing summary judgment, Nkansah relied on the defendant Towns's refusal to provide financial information relating to the companies that he contended would have proven that he had been swindled.  Judge Pratter noted that Nkansah had not moved to compel production of the requested documents or issued subpoenas to obtain them from the companies after Towns ignored his request.  Nkansah did not explain how Towns, as a shareholder sued in his individual capacity, could be compelled to produce the companies' financial records.  Hence, Judge Pratter found that Nkansah failed to present evidence to support his claim that he had been scammed.

In this action, Nkansah relies on Judge Pratter's criticism of Nkansah's attorneys' "lack of diligence in seeking this discovery before the eleventh hour of this litigation . . . ."[1] Judge Pratter concluded that that failure "doom[ed] Mr. Nkansah's attempt to seek late discovery in hopes of saving his claims against Messrs. Aiyegbusi, Drayton, and Towns."[2]

Moving for summary judgment here, the defendants argue that Nkansah has not satisfied an essential element of his legal malpractice cause of action.  They contend he has not proven that he has suffered an injury or loss as a result of their acts or omissions.  In short, they maintain that Nkansah cannot prove that he would have prevailed in the underlying action.

In opposing the motion, Nkansah relies on a purported affidavit of his Colombian lawyer, Juan Felipe Morales Acosta, describing pretrial proceedings in a Colombian case later brought by Nkansah against the defendants in the underlying action and others. Reviewing the document submitted under Federal Rule of Civil Procedure 44.1, we

---

[1] Defs.' Mot. for Summ. J. Ex. B at 10 (ECF No. 68-5) ("Judge Pratter Opinion").

[2] *Id.*

conclude that it was not a proper Rule 44.1 affidavit and it does not prove that Nkansah would have prevailed in his underlying action. In the absence of evidence showing that he would have won, Nkansah cannot show that he suffered a loss as a result of the defendants' professional negligence. Therefore, we shall grant the motion for summary judgment.

## Background

Stephen Nkansah claimed that he had agreed to invest in Wazzoo Juices, a Colombian beverage company, based on conversations he had with the underlying defendants who were shareholders in Juices and a related Colombian beverage company, Wazzoo Beverages.[3] Williams, a former colleague of Nkansah's, introduced him to Towns.[4] Towns and Nkansah discussed the two businesses over the course of several telephone conversations.[5] At a meeting in Philadelphia, Nkansah decided to invest in Juices.[6]

Nkansah claims he orally agreed with Towns to invest $180,000 in exchange for a 60% interest in Juices.[7] He contends that as part of the deal, he was entitled to review the company's financial statements and records upon request, and to a full refund of his money on demand.[8] During his deposition in the underlying action, Towns denied there

---

[3] Defs.' Mot. for Summ. J. Ex. C at 109:8-110:4 (ECF No. 69-4) ("Underlying Trial Transcript").

[4] *Id.* at 73:13-16.

[5] *Id.* at 73:3-9.

[6] *Id.* at 73:13-24; 109:8-110:4

[7] *Id.* at 73:1-9; *see also* Defs.' Ex. D at 202:6-8 (ECF No. 69-5) ("Nkansah Deposition Transcript"); J. Pratter Op. at 3, n.3.

[8] Underlying Trial Tr. at 109:8-110:4; J. Pratter Op. at 3.

3

was an oral agreement.[9]

Sometime after investing in Juices, Nkansah demanded the return of his investment.[10] When the underlying defendants did not return his money, Nkansah retained Kleinbard LLC to pursue claims against them to recoup his money.[11]

Nkansah's claim in the underlying action was that Towns, Aiyegbusi and Drayton used his money for Beverages rather than Juices.[12] As Judge Pratter explained, the issue was whether the underlying defendants "used money provided by Mr. Nkansah for Wazzoo Juices to benefit Wazzoo Beverages, or that they knew about this misuse of funds and failed to disclose it to Mr. Nkansah."[13] Judge Pratter found that the fraud claims failed because Nkansah could not establish that Towns's statements were misrepresentations or "Mr. Towns used Mr. Nkansah's money for anything other than Wazzoo Juices."[14]

In an attempt to survive summary judgment, Nkansah relied on his self-serving deposition testimony that Towns had made a statement that "if [he used Juices money for Beverages,] it's only $15,000."[15] Nkansah also pointed to "the fact that he did not

---

[9] Defs.' Mot. for Summ. J. Ex. I at 10:4-11 (ECF No. 69-10).

[10] *See* Nkansah Dep. Tr. at 290:13-291:5; *see also* Defs.' Mot. for Summ. J. Ex. A at ¶ 26 (ECF No. 69-2) ("Amended Complaint"); *see also* J. Pratter Op. at 4.

[11] Defs.' Stat. of Undisputed Facts at ¶ 35 (ECF No. 69) (admitted by Pl.); *see also* Am. Compl. at ¶ 26; *see also* J. Pratter Op. at 4.

[12] *See generally* J. Pratter Op.

[13] *Id.* at 7.

[14] *Id.* at 7-8.

[15] *Id.* at 8 (internal citations omitted).

receive all of the financial statements he had requested."[16]  Judge Pratter found the purported Towns statement as "hardly a definitive statement that Juices money was used for Beverages at all, let alone that Juices money provided by Mr. Nkansah was used for Beverages," concluding that it was insufficient to create a genuine issue of material fact as to the underlying fraud claims.[17]

Nkansah asked Judge Pratter to defer ruling on summary judgment to "allow him to seek an audit of Beverage and Juices" so that he could obtain the necessary financial documents.[18]  During discovery, Nkansah had requested the financial information.  After Towns failed to provide it, Nkansah did not move to compel.[19]  He did not even mention "the lack of these documents until he filed his *supplemental* response to the motion for summary judgment."[20]  Judge Pratter rejected Nkansah's "eleventh hour" request to defer ruling so he could "send an auditor to conduct an audit of the two Colombian businesses at issue" and denied his request for an audit.[21]

Nkansah's fraud claim against Williams was premised on Williams's statements vouching for Towns's integrity.[22]  Judge Pratter found these statements were not

---

[16] *Id.*

[17] *Id.* at 7-8.

[18] *Id.* at 8.

[19] *Id.*

[20] *Id.* at 9 (emphasis in original).

[21] *Id.* at 10.  No one discusses what power or authority any United States court has to order an audit of two foreign companies in Colombia.

[22] *Id.* at 11.

fraudulent misrepresentations.[23]  Judge Pratter granted summary judgment in favor of Towns, Williams, Aiyegbusi and Drayton on the fraud claims, and on the conversion claim against Towns.  She denied summary judgment on the contract claim against Towns.[24] Nkansah's contract claim against Towns was tried before a jury in December 2017.[25] Nkansah lost.[26]

Nkansah then brought this legal malpractice action against Kleinbard LLC and two attorneys in the firm (collectively "Kleinbard").  Nkansah argues that his underlying claims failed as a result of Kleinbard's negligence.  Kleinbard now moves for summary judgment.

**Standard of Review**

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence

---

[23] *Id.* at 11-12.

[24] *See generally id.*

[25] *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. D (ECF No. 70-6).

[26] *Id.*

of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## Analysis

To prevail in a legal malpractice action, the plaintiff must prove that: (1) he and the defendant attorney had an attorney-client relationship; (2) the attorney failed to exercise the ordinary skill and knowledge of a member of the legal profession; and (3) as a result of the attorney's negligence, he suffered actual loss. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998); *Myers v. Robert Lewis Seigle, P.C.*, 751 A.2d 1182, 1185 (Pa. Super. 2000).

Proving the case-within-a-case is a threshold issue. It is not enough to establish that the attorney was negligent for failing to exercise the ordinary skill, knowledge and care exercised by members of good standing in the legal profession. The plaintiff must prove actual loss as a result of the negligence. *Kituskie*, 714 A.2d at 1030. When he claims the attorney was negligent in litigating his case, the plaintiff must establish that the attorney's negligence caused him to lose the case he otherwise *would* have, not *could* have, won. *Id.; see also Myers*, 751 A.2d at 1185. In other words, the plaintiff must first prove that he would have prevailed in the underlying action absent the defendant attorney's negligence.

Nkansah contends he was unable to prove that his money was not spent on Juices

7

as he had intended because Kleinbard did not discover how his money had been spent. Nkansah still has not shown how an audit would have revealed that the underlying defendants "used money provided by Mr. Nkansah for Wazzoo Juices to benefit Wazzoo Beverages, or that they knew about this misuse of funds and failed to disclose it to Nkansah."[27]

After failing to survive summary judgment in the underlying action, Nkansah engaged a Colombian law firm to gather evidence.[28] The attorneys initiated proceedings in Colombia against the underlying defendants and others, including Juices and Beverages, seeking documents and testimony through pretrial evidentiary hearings.[29]

In opposing summary judgment in this case, Nkansah argues that had the defendants acted with diligence, he could have proven that he was defrauded by the defendants in the underlying case. To demonstrate that evidence of fraud was available, he proffers an affidavit of his Colombian attorney pursuant to Federal Rule of Civil Procedure 44.1.[30] The attorney summarizes what happened in pretrial proceedings in the Colombian court. Nkansah claims that his attorney's affidavit "sets forth conclusively established facts that support a finding that [his] funds were misappropriated by the Underlying Defendants . . . ."[31]

---

[27] J. Pratter Op. at 7.

[28] *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. B (ECF No. 70-4) ("Acosta Affidavit").

[29] *Id.* at 1-3.

[30] *Id.* at 1. Nkansah has also filed a Motion to Determine and Apply Foreign Law pursuant to Federal Rule of Civil Procedure 44.1. (ECF No. 73). Attached to that motion was a separate Declaration from Juan Felipe Morales Acosta. *See* Pl.'s Mot. to Determine and Apply Foreign Law Ex. A (ECF No. 73-3) ("Acosta Declaration").

[31] Pl.'s Resp. to Defs.' Mot. For Summ. J. at 9 (ECF No. 70).

Rule 44.1 permits litigants to submit testimony or affidavits to assist the court to determine substantive issues of foreign law. It provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

FED. R. CIV. P. 44.1.

A Rule 44.1 affidavit may be used only to inform the interpretation of substantive foreign law, not to find facts. *HFGL Ltd. v. Alex Lyon & Son Sales Managers and Auctioneers, Inc.*, 264 F.R.D. 146, 148 (D.N.J. 2009); *see ID Security Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 623 (E.D. Pa., 2002). Stated differently, the affidavit may be considered to decide a substantive issue of foreign law, not to make a factual determination or apply the law to the facts.

In *ID Security,* Judge Robreno accepted an expert's Rule 44.1 opinion interpreting Canadian law. *See ID Security,* 198 F. Supp. 2d at 622-23. At the same time, he rejected the expert's determination of the facts because it "invade[d] the province of the fact-finder." *Id.* He held that the expert's attempt to discuss and influence the facts of the case was "not an appropriate function of expert testimony under Rule 44.1." *Id.* Thus, if an affidavit submitted under Rule 44.1 goes beyond explaining or interpreting issues of foreign law and determines or suggests facts in light of the applicable law, it is improper and must be disregarded. *Id.*

Here, there is no issue of Colombian law to interpret. Acosta's affidavit is an attempt to direct and influence the fact finding in this case. Acosta summarizes what

occurred at the hearing.[32] At the hearing, the Colombian court "deemed that all of the asserted questions [presented at the hearing] were related to facts subject to be confessed."[33] According to Acosta, as a result of the underlying defendants' failure to appear, "the facts related to the asserted questions are deemed as true" under Colombian law.[34] Nkansah now relies on these "facts," called "implied confessions," to prove he was defrauded.[35] Thus, because it is being used to establish facts, the affidavit is not proper under Rule 44.1.

Even though the affidavit may not be appropriate under Rule 44.1, it may be considered on summary judgment under Rule 56. A sworn affidavit or declaration based on personal knowledge may be used to defeat summary judgment. *See* FED. R. CIV. P. 56(c)(1)(A). The rule provides that a plaintiff may assert that a fact is genuinely disputed by "citing to particular parts of materials in the record including depositions . . . affidavits or declarations." *Id.* However, "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595,

---

[32] His declaration and affidavit both note that none of the underlying defendants appeared at the Colombian hearing on August 3, 2018. *See* Acosta Decl. at ¶ 21; *see also* Acosta Aff. at 6-7. Aiyegbusi and Williams had been sent summons but had not been served. *See* Acosta Aff. at 4-5 ("All of the requested parties, excepting Dotun Auyegbusi [*sic*] and Robert Lee Williams, were duly served prior for the hearing of August 3, 2018"). Towns and Drayton were "duly served," at least according to Acosta, and did not attend. *See* Acosta Decl. at ¶ 19 ("We duly served all the defendants, except for Robert Lee Williams and Dotun Aiyegbusi, whom we were not able to serve before the hearing. However, we duly served them later and the Court summoned them for a new hearing" which took place on June 26, 2019).

[33] *See* Acosta Aff. at 7.

[34] *Id.*

[35] *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. C (ECF No. 70-5); Pl.'s Mot. in Resp. to Summ. J. at 2 ("[T]he case-within-a-case is supported by the Colombian proceedings").

608 (3d Cir. 2002)).

Here, Acosta reports what happened at the pretrial hearing. He does not have any personal knowledge of the facts regarding the disposition or use of Nkansah's investment – facts that would help Nkansah prove his case-within-a-case. But, he does include a transcript of the proceedings where witnesses testified under oath. That testimony, though not generated in this case, may be considered under Rule 56. *See* FED. R. CIV. P. 56(c)(3).[36]

Acosta's affidavit summarizing what happened at the hearing is not the equivalent of a transcript of the proceedings. The proceedings were transcribed and translated. Similarly, the documents produced by Beverages and Juices have been translated and are available, but Nkansah has not produced them here. Nevertheless, a transcript of the proceedings was attached to his Rule 44.1 motion.[37] A review of the transcript reveals why Nkansah cannot prove his case-within-a-case.

The Colombian pretrial proceedings revealed information that was more harmful than beneficial to Nkansah. Testimony of Juice's legal representative, Jorge Restrepo,

---

[36] Because the transcript was attached to Nkansah's Motion to Determine and Apply Foreign Law, it is part of the record. *See* Moore's Federal Practice, § 56.97 (2021) (explaining that if "a document is already part of the record, *such as through attachment as an exhibit* to a pleading . . . [t]he materials need not be re-introduced by affixing them to an affidavit") (emphasis added). We may consider any material on the record when making our summary judgment determination. FED. R. CIV. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record"); *see also* Moore's Federal Practice, § 56.97 (stating that "a court *may* look to materials that were not cited, as long as they are in the record") (emphasis in original); Wright & Miller, Federal Practice and Procedure, § 2721 (4th ed.) (explaining that the "court and the parties have great flexibility with regard to the evidence that may be used in a Rule 56 proceeding" and that the court "has discretion to consider other materials in the record when making its determination").

[37] *See* Pl.'s Mot. to Determine and Apply Foreign Law; Acosta Decl. Ex. 1 (ECF No. 73-4), Ex. 2 (ECF No. 73-5), Ex. 2 pt. 2 (ECF No. 73-6) ("August 3, 2018 Hearing Transcript"), Ex. 3 (ECF No. 73-7), Ex. 4 (ECF No. 73-8) ("February 26, 2019 Order"), Ex. 5 (ECF No. 73-9) ("March 27, 2019 Order"), Ex. 6 (ECF No. 73-10), Ex. 7 (ECF No. 73-11) ("May 2, 2019 Order"), Ex. 8 (ECF No. 73-12), and Ex. 9 (ECF No. 73-13).

explains that Nkansah was never a record shareholder of Juices because he refused to comply with Colombian regulations.[38] Restrepo testified that Nkansah bypassed Colombian legislation meant to prevent money laundering by channeling money through third parties.[39] Restrepo explicitly stated that, as a result, there is no record of Nkansah having invested any money in his name in Juices.[40]

More damaging was the testimony that dispelled any notion that Nkansah's money was improperly diverted. Restrepo testified repeatedly that Nkansah gave instructions on how his money, funneled into the company through the underlying defendants, was to be spent and that his instructions were followed. The following exchange took place between Nkansah's attorney and Restrepo at the August 3, 2018 hearing in Colombia:

> Question: "State whether it is true whether or not that [*sic*] the money paid by STEPHEN NKANSAH was used for purposes other than the shares of WAZZOO JUICES SAS."
>
> Answer: "Nothing could be further from the truth. Mr. STEPHEN gave explicit orders as to what had to be done with that money, with the money allegedly sent, that I just told you yes to through BYRON or DOTUN. He gave explicit orders on what to do with that money . . . ."[41]
>
> . . .
>
> Question: "State whether it is true or not that WAZZOO JUICES SAS held on to the money provided by Mr. STEPHEN NKANSAH, and did not return it to him."
>
> Answer: "That money had been spent a long time before that, invested in what he had instructed it to be invested, so the answer is obviously not.

---

[38] Aug. 3, 2018 Hearing Tr. at 12-14.

[39] *Id.* at 11 ("[A]fter several communications and after practically begging [Nkansah] to send the documentation, he refused and Bancolombia returned the money to the account that had sent it. I understand they do that to prevent money laundering").

[40] *Id.* at 12 ("[T]here is no document in Colombia from Mr. Stephen [Nkansah], or in the Wazzoo Juices or Wazzoo Beverages companies, because the man refused categorically to provide the documents required by Colombian legislation").

[41] *Id.* at 14.

> Because that man had given orders as to how to invest the money, those resources had been invested for a while. I explain to you again, the man had directed the company to invest in expensive molds, in labels, in containers, in trying to open offices, and when he disappeared the company was left hanging, and a firm that was trying to resurface went under. There were no resources to pay people, indeed, for more than 4 or 5 months they did not even pay me, I had to go find another job. Therefore, nothing could be further from reality."[42]

At oral argument, Nkansah's counsel argued that wire transfers proved Nkansah was defrauded because they showed some of his funds were deposited into a Beverages bank account.[43] While Restrepo acknowledged that some of the funds Nkansah sent through third parties for Juices may have temporarily sat in the Beverages bank account, he testified that the funds were never used for Beverages.[44] Nkansah has not rebutted this testimony or offered evidence that proves otherwise. Instead, he relies on his own unsubstantiated suspicion.

Beverages and Juices also produced documents at the Colombian hearing.[45] Although they have been translated and are available, Nkansah has not proffered them here.

At the pretrial proceeding, the Juices representative produced tax returns, tax

---

[42] *Id.* at 15.

[43] *See* Oral Arg. Tr. at 43:10-44:2, 52:9-18, 55:29-56:13; *see also* Defs.' Mot. for Summ. J. Ex. E at KLLC015965-67 (ECF No. 69-6) ("Wire Transfers").

[44] *Id.* at 18 (Restrepo explained that "whether money entered into the WAZZOO BEVERAGES account from the gentleman [Nkansah], that may have happened, because according the Bancolombia legislation, they would not let X amount be in JUICES. Thus, the money he allegedly sent might have gone to the other account, but it was used in what he said it had to be used, not for BEVERAGES"); *see also* Acosta Decl. at ¶ 22 (referencing Restrepo's testimony that Nkansah's money may have entered the Beverages account and "that it was used as directed by Mr. Nkansah").

[45] *See* Acosta Aff. at 8 (Under "Translations" heading, "Documents provided by Wazzoo Beverages S.A.S. and Wazzoo Juices S.A.S.").

registration forms and balance sheets.[46] He explained that additional financial documents sought by Nkansah were in the possession of either Towns or his attorney who had used them at the trial in the underlying case. He testified, "[t]here are many more and with respect to the other documentation . . . that documentation must be in the possession of Mr. Robert Towns or the lawyer who handled the case in the United States . . . . I think a lot of that documentation was presented at the United States trial, so they should have it there."[47] Nkansah was free to obtain and produce these records. He did not.

Five months later, on February 26, 2019, the Colombian court advised that the documents had not been produced.[48] On March 26, 2019, it ordered Restrepo to produce the documents within ten days,[49] and extended the deadline to May 7, 2019.[50] Nkansah has not advised whether they have been produced.[51] What they revealed or may reveal is unknown. Certainly, Nkansah has not shown that an audit of the documents would have substantiated his claim in the underlying action.

In attempting to trace his money, Nkansah was no more successful than the defendants had been in the underlying case. The only evidence explaining what happened to his money shows that it was spent as he had intended and had directed. The wire transfers offered by Nkansah at oral argument do not prove that his money had

---

[46] Aug. 3, 2018 Hearing Tr. at 21.

[47] *Id.*

[48] *See* Feb. 25, 2019 Order.

[49] *See* Mar. 27, 2019 Order.

[50] *See* May 2, 2019 Order.

[51] Acosta Decl. at ¶ 28. "Mr. Restrepo has at no time submitted the requested documents on behalf of Juices/Beverages tracing Mr. Nkansah's money." *Id.*

14

been used by Beverages instead of Juices. On the contrary, the wire transfers corroborate Restrepo's testimony.

There were two transfers from Stephen Nkansah Consulting Group to Drayton and one to Aiyegbusi.[52] The funds wired to Aiyegbusi were transferred to a Juices account at Bancolombia. The funds wired to Drayton were transferred to a Beverages account at Bancolombia. Three other additional wire transfers from Stephen Nkansah Consulting Group were used for the benefit of Juices.[53] They were to an advertising agency for Juices radio ads, a law firm for legal services and a company for design of a Juices website.[54]

As Restrepo testified, there is no record of Nkansah having been a shareholder of Juices because he had used middlemen to disguise any money he invested to skirt Colombian money laundering laws. The wire transfers to Aiyegbusi and Drayton explain the absence of a record of Nkansah's investment in Juices.

Restrepo's explanation that Nkansah's money may have been deposited in the Beverage's account only temporarily is not proven by the wire transfers. But, Nkansah has proffered no evidence to contradict or cast doubt on Restrepo's sworn testimony that any money transferred to the Beverages account was only temporary.

Rather than supporting Nkansah's case-within-a-case, the testimony from the Colombian proceeding demonstrates that he would not have been successful in proving he had been defrauded. He has been unsuccessful in his own attempt to obtain relevant

---

[52] *See* Wire Transfers at KLLOC015296 and KLLC015298-99.

[53] *See id.* at KLLC015297, KLLC015302 and KLLC015303.

[54] *Id.*

financial documents from the two companies that he claims could show that his investment has been diverted. He is unable to show how an audit would corroborate his claims. In short, Nkansah has failed to produce evidence establishing that he would have won his case-within-a-case.

*The Zoldan Report*

Nkansah's expert, Kenneth J. Zoldan, does not help his case. Rather, he strikes a fatal blow to it. He cannot conclude that Nkansah would have prevailed in the underlying action.

Zoldan opined in his expert report that the defendants should have: (1) compelled production of documents; (2) obtained an adverse inference from the defendants' failure to produce those documents; and (3) argued the legal sufficiency of circumstantial evidence of fraud.[55] Had they done so, Zoldan wrote, Nkansah would have survived summary judgment and prevailed at trial.[56] Contrary to this absolute statement, Zoldan was equivocal at his deposition. He was not so certain that Nkansah would have prevailed. Indeed, as the following exchange reveals, he concedes that he cannot opine that Nkansah would have won his case:

> Question: "Looking down at your summary of opinions, you state that the conduct of defendants was a cause through bringing about harm to Nkansah and deprived Nkansah of an underlying judgment. What claim or claims do you believe would have been successful but for the alleged negligence of the defendants?
>
> Answer: "Well, as I stated, I think that he could have proved his fraud claim had discovery been pursued probably by the Kleinbard defendants."

---

[55] *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. A at 14 (ECF No. 70-3) ("Zoldan Report"); *see also* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 2.

[56] *See* Zoldan Report at 14.

16

. . .

> Question: "Okay. But you are not going to offer an opinion that he would have been successful in the underlying case, but for the alleged negligence, is that fair?"
>
> Answer: "Well, I think what I'm saying is he could have been successful, and based on what the Colombian lawyers were able to get through the failure to respond and the negative inference that could have been – that, you know, possibly could have been used by the Kleinbard lawyers had they pursued this course also, it would seem to me that there was a fairly good chance that it would have been successful."
>
> Question: "I just want to parse being a lawyer and difficult about that sort of thing. What you're saying is that there is a good possibility that he could have been successful, is that fair?"
>
> . . .
>
> Answer: "I think that there is a fairly decent possibility. I don't want to put a percentage on it, that he could have been successful had the Kleinbard defendants pursued the discovery as I believe they should have in the underlying case. But they didn't."[57]

Later in the deposition, the following exchange took place:

> Question: "Okay. Sitting here today, can you give me a percentage likelihood that Nkansah could have succeeded against Aiyegbush [*sic*], Drayton and Williams based upon a claim that they remained silent?"
>
> Answer: "I can't give you a percentage likelihood."
>
> Question: "Okay. Do you think it's more likely than not?"
>
> Answer: "They could have succeeded."
>
> Question: "Okay. But is it fair to say you're not willing to state that they would have succeeded?"
>
> Answer: "It's fair to say that I think they could have succeeded."
>
> Question: "Okay. But you're unwilling to state that they would have succeeded, is that fair?"
>
> Answer: "I'm not saying that they would have succeeded. I'm saying that they could have succeeded. In my opinion."
>
> Question: "Okay."
>
> Answer: "I'm not saying that they wouldn't have succeeded either."

---

[57] Pl.'s Praecipe to Attach to Pl.'s Resp. to Defs.' Mot. for Summ. J. Ex. 2 at 101:11-103:22 (ECF Nos. 79-2) ("Zoldan Deposition Transcript").

17

> Question: "I understand that. You think there is some chance that they might have succeeded, but you're unwilling to tell me what the percentage is?"
>
> Answer: "I don't know what the percentage is, so I can't tell you."[58]

To prove actual loss, Nkansah must establish that he *would* have, not *could have*, been successful in the underlying action but for the defendants' malpractice. *See Myers,* 751 A.2d at 1185. An increased risk of harm standard does not apply in a legal malpractice case. It does not satisfy the actual loss element.

Zoldan does not opine that Nkansah *would* have won, only that he *could* have been successful. Zoldan's testimony that Nkansah had a "fairly decent probability" of success does not establish actual loss.[59] Zoldan's opinion is, at most, that the defendants' negligence increased the risk of harm – a standard that is not applicable in a professional negligence case.

Zoldan did not review Nkansah's deposition, the transcript of the Towns trial or the Colombian proceedings material.[60] He relied on what Nkansah had alleged in his amended complaint. He accepted, without question and corroborating evidence, Nkansah's allegations of fraud, the existence of an agreement and discussions of how his money was spent. He conceded that he did not know what documents would have been obtained through a motion to compel or subpoena.[61] Consequently, he cannot say what they would have proven. He concludes it was only possible that further discovery

---

[58] *Id.* at 133:25-135:3.

[59] *Id.* at 103:16-17.

[60] *See* Zoldan Report at 1-2.

[61] Zoldan Dep. Tr. at 50:14-51:25.

would have identified evidence of fraud.[62]

## Conclusion

The undisputed evidence shows that Nkansah cannot prove that he would have prevailed in the underlying action. He cannot establish actual injury. Because Nkansah cannot prove his case-within-a-case, an essential element of his professional negligence cause of action, we shall grant the motion for summary judgment.

---

[62] *Id.* at 90:6-10.